# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GINA F. SIMCOX,

          Plaintiff,

     v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,[1]

          Defendant.

CIVIL ACTION NO. 1:16-CV-00499

(KANE, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Gina F. Simcox's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. The matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is respectfully recommended that the Commissioner's decision be vacated and that the case be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of former Acting Commissioner Carolyn W. Colvin.

## I.   BACKGROUND & PROCEDURAL HISTORY

On September 11, 2012, Ms. Simcox protectively filed an application for benefits under Title II of the Social Security Act asserting an onset date of August 31, 2012, at which time she was 42 years old. (Doc. 1, ¶¶ 5, 14; Doc. 10-3, at 12). Ms. Simcox alleges that she became disabled due to tremors and bipolar disorder. (Doc. 10-2, at 2).

On November 28, 2012, Ms. Simcox's claims were denied at the initial level of administrative review. (Doc. 10-3, at 11; Doc. 10-4, at 2-6). During the initial evaluation of Ms. Simcox's claims, it was determined that the available evidence established the existence of the following medically determinable severe impairments: affective disorders and other disorders of the nervous system. (Doc. 10-3, at 5). Her claim was denied after an adjudicator determined that Ms. Simcox was capable of adjusting to other work at a light exertional level. (Doc. 10-3, at 10-11; Doc. 10-4, at 2-3). Ms. Simcox filed a timely request for a hearing before an administrative law judge ("ALJ") on January 15, 2013. (Doc. 10-4, at 11-12).

On July 16, 2014, Ms. Simcox appeared and testified during an administrative hearing before ALJ Patrick S. Cutter. (Doc. 10-2, at 26, 44-73). Impartial vocational expert Andrew Caporale ("VE Caporale") also appeared and testified at the hearing. (Doc. 10-2, at 26). Ms. Simcox was represented by counsel during this proceeding. (Doc. 10-2, at 26). The ALJ denied Ms. Simcox's claims in a written decision dated July 31, 2014, in which the ALJ concluded that Ms. Simcox was capable of adjusting to a limited range of light work for which there exists a significant number of jobs in the national economy. (Doc. 10-2, at 26-38); *see* 20 C.F.R. § 404.1567(b) (defining "light work" in regard to Title II claims). On September 3, 2014, Ms. Simcox requested review of the ALJ's decision by the Appeals

Council of the Office of Disability Adjudication and Review. (Doc. 10-2, at 19-20). The Appeals Council denied her request for review on January 20, 2016, thus affirming the ALJ's July of 2014 decision as the final decision of the Commissioner subject to judicial review by this Court. (Doc. 10-2, at 2-6).

Ms. Simcox initiated this action by filing a complaint, through counsel, on March 24, 2016. (Doc. 1). In her complaint, Ms. Simcox alleged that the ALJ's decision is "erroneous and contrary to settled law." (Doc. 1, ¶ 16). As relief she requests that this Court reverse the ALJ's decision and award benefits, or in the alternative, remand this case for a new administrative hearing. (Doc. 1, at 3). After service of the complaint, the Commissioner filed an answer together with a certified transcript of the entire record of the administrative proceedings on June 9, 2016. (Doc. 9; Doc. 10). In her answer, the Commissioner asserts that the ALJ's findings of fact are supported by substantial evidence and that the decision was made in accordance with the law and regulations. (Doc. 9, ¶12). This matter has been fully briefed by the parties and is now ripe for decision. (Doc. 15; Doc. 18; Doc. 19).

## II.  STANDARD OF REVIEW

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, a claimant must have a

severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age,

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3] "Substantial gainful activity" is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] A claimant's RFC is the most a claimant can still do despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). This assessment encompasses all of the claimant's medically-determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The ALJ assesses the claimant's RFC before proceeding from step three to step four in the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The RFC is then used at steps four and five to evaluate the claimant's case. 20 C.F.R. § 404.1520(a)(4), 404.1545(a)(5).

education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a) (effective June 12, 2014, through Apr. 19, 2015).[6] Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) (effective June 12, 2014, through Apr. 19, 2015).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing

---

[6] The version of 20 C.F.R. § 404.1512 in effect at the time the ALJ issued his decision in this case have been amended during the pendency of this action. Section (a) of the regulation remains virtually unchanged. *See* 20 C.F.R. § 404.1512(a) (effective Mar. 27, 2017). However, section F has been redesignated as section (b)(3). *See* 20 C.F.R. § 404.1512(b)(3) (effective Mar. 27, 2017). In this opinion, the Court cites to the regulations relied on by the ALJ when he evaluated Ms. Simcox's claim. In any event, the application of the new version of this provision would not affect the analysis of this case.

evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. Simcox is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III. THE ALJ'S DECISION

In his July 2014 decision denying Ms. Simcox's applications for benefits, the ALJ assessed Ms. Simcox's case at each step of the five-step sequential evaluation process before concluding that Ms. Simcox was "not disabled" because she could adjust to other work that exists in the national economy. (Doc. 10-2, at 26-38). As a preliminary matter, the ALJ found that Simcox met the insured status requirement of Title II of the Social Security Act

through December 31, 2016. (Doc. 10-2, at 26, 28). Thus, in order to prevail on her Title II claim, Ms. Simcox needed to show that she became disabled on or before that date. (Doc. 10-2, at 26).

Proceeding to step one of the sequential evaluation process, the ALJ found that Ms. Simcox had not engaged in substantial gainful activity since the August 31, 2012 onset date. (Doc. 10-2, at 28).

At step two, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments during the relevant period: bipolar disorder (mixed presentation), substance use in remission, and essential tremors (benign). (Doc. 10-2, at 28-29).

At step three, the ALJ found that, during the relevant period, Ms. Simcox did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 that was in effect on the date the ALJ issued his decision. (Doc. 10-2, at 29-30). Specifically, the ALJ determined that Simcox's tremors did not meet the listings in Section 11.00, Neurological Disorders. (Doc. 10-2, at 29). The ALJ then concluded that the severity of Simcox's mental impairments, considered in combination, did not meet listings 12.04 or 12.06. (Doc. 10-2, at 29-30).

Between steps three and four, the ALJ assessed Ms. Simcox's RFC. (Doc. 10-2, at 30-36). Ms. Simcox alleged that her impairments of bipolar disorder and tremors caused symptoms of crying, difficulty sleeping, poor stress tolerance, shakiness and palpitations, and also impacted her ability to remember, concentrate, understand, and use her hands. (Doc. 10-2, at 31). After examining her statements and the medical evidence, the ALJ found

that Ms. Simcox's impairments could reasonably be expected to cause the alleged symptoms, but that the Ms. Simcox's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Doc. 10-2, at 32). The ALJ then went on to detail Ms. Simcox's medical history, including her past hospitalizations and mental health therapy. (Doc. 10-2, at 32-36). In doing so, the ALJ considered and weighed medical opinions by the following sources: treating psychologist Rebekah Feeser ("Dr. Feeser"), treating certified registered nurse practitioner Renee Orris ("CRNP Orris"), nonexamining state agency medical consultant Jerry Brenner ("Dr. Brenner"), nonexamining state agency psychologist Edward Jonas ("Dr. Jonas"), and disability benefits analyst Debrena Grenia. (Doc. 10-2, at 35; Doc. 10-3; Doc. 10-5, at 22-23; Doc. 10-11, at 16-23; Doc. 10-12, at 51-52; Doc. 10-13, at 2-3). Finally, the ALJ also considered Ms. Simcox's global assessment of functioning ("GAF") scores and a pair of third-party reports from friend Tricia Cressler and former coworker/supervisor Tiffany Mahan. (Doc. 10-2, at 35-36; Doc. 10-6, at 63-64; Doc. 10-8, at 105; Doc. 10-9, at 39; Doc. 10-10, at 4, 21).

Dr. Feeser examined Ms. Simcox on a weekly basis beginning in May of 2011. (Doc. 10-7, at 116; Doc. 10-8, at 45; Doc. 10-12, at 106). The ALJ noted that Dr. Feeser's progress notes indicated "essentially . . . normal findings on mental status examination and that the claimant was doing well." (Doc. 10-2, at 35). Nonetheless, Dr. Feeser completed a check-the-box questionnaire entitled "medical statement regarding the nature and severity of mental impairment(s)" on July 14, 2014, in which she opined that Ms. Simcox had extreme limitations in the following areas of functioning: tolerating work stress/pressure; maintaining attention/concentration during an 8-hour day; completing a normal workday or workweek; responding appropriately to changes in the work setting; and fulfilling quotas

or production requirements. (Doc. 10-2, at 35; Doc. 10-13, at 2-3). The ALJ found that Dr. Feeser's questionnaire responses were "grossly disproportionate to the clinical findings in the treatment records," and therefore only afforded her opinion limited weight. (Doc. 10-2, at 35).

The ALJ also addressed the opinion of CRNP Orris. (Doc. 10-2, at 35). CRNP Orris examined Ms. Simcox on several occasions both leading up to and after Ms. Simcox underwent a deep brain stimulation ("DBS") surgical procedure to treat her tremors in April of 2013. (Doc. 10-2, at 4-7, 23-28, 36-62, 103. In one examination, about a month after the DBS procedure, CRNP Orris opined on Ms. Simcox's ability to work and stated that "i[t] [wa]s reasonable to remain off work over the course of the next 3 months postoperatively for ability to manage the [DBS] device in an effort to reduce her tremor control . . . ." (Doc. 10-2, at 51-52). The ALJ reasoned that because this particular opinion only pertained to Ms. Simcox's temporary functioning in the wake of the DBS implant, the opinion should be afforded limited weight. (Doc. 10-2, at 35).

In addition to the opinions from Dr. Feeser and Dr. Orris, the ALJ also took into account the opinions of two nonexamining state agency consultants. (Doc. 10-2, at 35; Doc. 10-3). On November 15, 2012, Dr. Brenner assessed Ms. Simcox as physically capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking more than 6 hours on a sustained basis in an 8-hour work day, and sitting more than 6 hours on a sustained basis in an 8-hour work day. (Doc. 10-3, at 7). The only exertional limitation that Dr. Brenner noted was that Ms. Simcox was restricted to only occasional fine fingering manipulation with both hands. (Doc. 10-3, at 7-8). Dr. Brenner explained his opinions by noting the following observations: Ms. Simcox

had benign essential tremors thought to be secondary to her anti-psychotic medications; a neurological examination in September of 2012 revealed normal results except for coarse tremors at rest and with activity, while Ms. Simcox's finger-to-nose and rapid alternating movements were intact; and that Ms. Simcox was able to drive. (Doc. 10-3, at 8). The ALJ afforded Dr. Brenner's opinion significant weight, stating that it was well reasoned and supported by the objective findings in the record. (Doc. 10-2, at 35).

Dr. Jonas, a nonexamining state agency psychologist, proffered an opinion on October 16, 2012 assessing Ms. Simcox as mentally capable of engaging in activities of daily living, understanding and remembering, maintaining concentration, making simple decisions, asking simple questions, and accepting instruction. (Doc. 10-3, at 5-6, 8-9). Dr. Jonas also opined, however, that Ms. Simcox had limited stress tolerance and was moderately limited in her ability to adapt appropriately to changes in the work setting and interact socially. (Doc. 10-3, at 5-6, 8-9). Specifically, Dr. Jonas noted that Ms. Simcox's social interaction was limited by difficulties interacting with the public, responding to criticism from superiors, and getting along with coworkers without exhibiting behavioral extremes. (Doc. 10-3, at 9). Despite these limitations, Dr. Jonas found that Ms. Simcox was not precluded "from performing the basic mental demands of competitive work on a sustained basis." (Doc. 10-3, at 9). The ALJ found Dr. Jonas's opinion to be worthy of significant weight, and noted that the opinion was "consistent with [Ms. Simcox's] history of poor stress tolerance, emotional ability and mood disturbances." (Doc. 10-2, at 35). The ALJ cited Dr. Jonas's opinions regarding Ms. Simcox's stress tolerance, minimal memory impairment, and anxiety in finding that her RFC is limited to simple tasks with no fast-paced production quotas. (Doc. 10-2, at 35).

As a final matter, the ALJ also briefly addressed the opinion of disability benefits analyst Debrena Grenia. (Doc. 10-2, at 35). Ms. Grenia, an employee of Standard Insurance Company, opined that Ms. Simcox was eligible for long term disability ("LTD") insurance benefits because her tremors alone constituted cause for disability. (Doc. 10-5, at 22-23). The ALJ found this opinion to be worthy of little-to-no weight, however, because Ms. Grenia was not an acceptable medical source and because the LTD assessment did not consider Ms. Simcox's ability to perform work—a crucial component of a benefits determination under Title II of the Social Security Act. (Doc. 10-2, at 35; Doc. 10-5, at 22-23); *see also* 20 C.F.R. §§ 404.1502(a) (defining "acceptable medical source"), 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . .").

Based on his consideration of the above medical opinions and of the other relevant evidence of record, the ALJ assessed that, during the relevant period, Ms. Simcox had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional nonexertional limitations:

> need to occasionally perform fine finger manipulation bilaterally; work should involve only routine, repetitive one to two step type tasks; occasional interaction with the public, coworkers and supervisors; occasional changes and decision-making; and no fast paced production quotas.

(Doc. 10-2, at 30).

At step four of the sequential evaluation process, the ALJ found that Ms. Simcox was unable to perform any past relevant work. (Doc. 10-2, at 36). Ms. Simcox's past relevant work included: customer service representative; sales representative, telephone service; sales representative, publications; and sales representative, financial services. (Doc. 10-2, at 36). The ALJ explained that the demands of each of these jobs exceeded Ms.

Simcox's current RFC in at least some aspect. (Doc. 10-2, at 36). Furthermore, the ALJ noted that his findings were consistent with VE Caporale's testimony that—based on the ALJ's assessment of Ms. Simcox's current RFC—Ms. Simcox could not perform her past relevant work. (Doc. 10-2, at 36, 69).

At step five, the ALJ considered Ms. Simcox's RFC, age (younger individual), education (high school or above), and work experience to ultimately conclude that jobs existed in significant numbers in the national economy that Ms. Simcox could perform. (Doc. 10-2, at 36-37). The ALJ based his assessment on testimony by VE Caporale. (Doc. 10-2, at 37). In response to a hypothetical question that mirrors the RFC above, VE Caporale testified that an individual of the same age, education, work experience, and RFC as Ms. Simcox could adjust to work in the following representative occupations: bakery worker, conveyor line (DOT #524.687-022); sorter, agricultural produce (DOT #529.687-186); and cleaner, housekeeper (DOT #323.687-014). (Doc. 10-2, at 37, 69-70). VE Caporale also testified that there are approximately 57,000 jobs in the national economy and 4,300 statewide as a bakery worker, conveyor line; approximately 42,000 jobs in the national economy and 2,100 statewide as a sorter, agricultural produce; and approximately 720,000 jobs in the national economy and nearly 24,000 statewide as a cleaner, housekeeper. (Doc. 10-2, at 37, 70). Accordingly, the ALJ concluded that Ms. Simcox was not disabled because she could adjust to other work that exists in significant numbers in the national economy despite the limiting effects of her impairments. (Doc. 10-2, at 37).

## IV. ANALYSIS

Ms. Simcox alleges the following three errors in arguing that the ALJ's decision denying her applications for benefits is not supported by substantial evidence: (1) that the

ALJ did not properly evaluate the medical opinion evidence in the record; (2) that the ALJ did not present VE Caporale with all limitations that the ALJ acknowledged were credibly established in the record; and (3) that the ALJ wrongfully summarily rejected findings by Ms. Simcox's treating sources that she had additional mental impairments. (Doc. 15, at 7). As relief, Ms. Simcox seeks reversal of the ALJ's decision or alternatively, a remand for a new administrative hearing. (Doc. 1, at 3; Doc. 15, at 15).

### A. THE ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Ms. Simcox first argues that the ALJ erred by failing to properly weigh all relevant medical opinion evidence. (Doc. 15, at 8-12). Specifically, Ms. Simcox contends that the ALJ completely failed to address the medical opinion evidence of treating psychiatrist Rahat Taswir ("Dr. Taswir"), and that the ALJ also improperly weighed the remaining medical opinion evidence that he managed to consider. (Doc. 15, at 8-12).

### 1. The ALJ erred by failing to address Dr. Taswir's opinion

Ms. Simcox argues that the ALJ impermissibly ignored Dr. Taswir's medical opinion. (Doc. 15, at 8-10). In particular, Ms. Simcox notes that Dr. Taswir assessed her with a GAF score of 45 in September of 2011, and opined that Ms. Simcox's medical impairments prevented her from working in an LTD insurance statement completed in May of 2013. (Doc. 10-7, at 116-18; Doc. 10-11, at 24-25). In addition to these opinions, the record also contains several pages of progress notes from Ms. Simcox's visits with Dr. Taswir between September of 2011 and May of 2013. (Doc. 10-7, at 100-18; Doc. 10-8, at 116-19; Doc. 10-11, at 16-25). In her brief, the Commissioner argued that the ALJ's failure to consider Dr. Taswir's opinion was merely harmless error. (Doc. 18, at 15-16).

It is well-settled law that an ALJ has the authority to evaluate and weigh medical opinions. *See* 20 C.F.R. §§ 404.1527(c). However, the federal regulations are equally clear that an ALJ "will evaluate every medical opinion . . . receive[d]." 20 C.F.R. §§ 404.1527(c). Indeed, "[t]he Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) ("[T]he ALJ must review all of the pertinent medical evidence, explaining his conciliations and rejections."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[7] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

The Commissioner attempts to downplay the impact of the ALJ's omission by noting that some of Dr. Taswir's opinions were based on examinations that occurred before the alleged onset date and by inferring that there is a *de minimus* exception to the requirement that an ALJ must weigh all medical opinion evidence. (Doc. 18, at 16 n.1 (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). However, the Commissioner is mistaken in her contention that Dr. Taswir's medical evidence from before the onset date is

---

[7] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

irrelevant. Indeed, the federal regulations expressly require an ALJ to consider medical records for at least a year prior to a claimant's application for benefits. *See* 20 C.F.R. § 404.1512(d) (effective June 12, 2014, through Apr. 19, 2015) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). Because Dr. Taswir treated Ms. Simcox between September of 2011 and May of 2013, all of Dr. Taswir's examinations of Ms. Simcox occurred either within the relevant period or the preceding 12 months. (Doc. 10-11, at 24 (listing treatment dates)). Furthermore, even if—as the Commissioner contends—an ALJ is not required to evaluate every piece of evidence, the Commissioner points to no caselaw that supports the proposition that an ALJ may ignore the opinion of a treating medical source. (Doc. 18, at 16 n.1). To the contrary, the United States Court of Appeals for the Third Circuit makes clear that an ALJ must consider a treating source's opinion. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight."); *Adorno*, 40 F.3d at 48 (remanding case where ALJ failed to mention the opinion of one of two treating sources).

The ALJ's failure to acknowledge treating psychiatrist Dr. Taswir's opinion evidence leaves the Court unable to conclude that the ALJ's assessment of the medical opinion evidence was supported by substantial evidence. Accordingly, it is respectfully recommended that the Commissioner's decision be vacated and that the case be remanded.

### 2. The ALJ improperly weighed the medical opinion evidence that he considered

Ms. Simcox also asserts that the ALJ erred in the allocation of weight of the medical opinion evidence that he considered. (Doc. 15, at 10-12). Namely, Ms. Simcox argues that the ALJ improperly accorded the opinions of nonexamining state agency medical consultants Dr. Brenner and Dr. Jonas more weight than that of Dr. Feeser, Ms. Simcox's treating physician. (Doc. 15, at 10-11). SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Feeser. SSR 96-6p, 1996 WL 374180 (July 2, 1996).[8] SSR 96-6p notes that "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. § 404.1527(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996). A treating physician's opinion warrants controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. *See* SSR 96-2p, 1996 WL 374188. Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527," which

---

[8] SSR 96-6p was published and became effective on July 2, 1996. Although since rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time the ALJ rendered his decision in this matter.

16

are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, Ms. Simcox maintains that Dr. Feeser's opinion should have been accorded more significant weight vis-a-vis the opinions from the two nonexamining state agency medical consultants. (Doc. 15, at 10-11). Although this Court's substantial evidence review of an ALJ's medical opinion evaluation is deferential in nature, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Under certain conditions, "opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). However, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (quotations omitted).

In the case at bar, the ALJ's cursory analysis of the relevant evidence precludes the Court from finding that his weighing of medical opinion evidence was supported by substantial evidence. *See, e.g.*, *Ray v. Colvin*, Civ. No. 13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's

opinions runs afoul of the regulation's requirement to 'give good reasons' for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on that basis"). *See generally Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("[T]he Secretary must 'explicitly' weigh all relevant, probative and available evidence."). As a preliminary matter, in failing to consider Dr. Taswir's opinion, the ALJ deprived himself of the ability to accurately assess the level of evidentiary support in the record for the opinions of Dr. Feeser and the two state agency consultants. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) ("[W]hen witnesses give conflicting testimony, the ALJ cannot reject evidence for no reason or the wrong reason." (citation omitted)).

Furthermore, both Dr. Brenner and Dr. Jonas reviewed an incomplete medical record when they formulated their opinions. Specifically, Ms. Simcox notes that a total of 24 exhibits were added to the record after the state agency consultants proffered their opinions and Ms. Simcox's disability claim was denied at the initial level of administrative review. (Doc. 15, at 10-11). The Commissioner concedes in her brief that the state agency consultants' opinions were drafted "without benefit of the recent evidence . . . ." (Doc. 18, at 13). Because these nonexamining sources did not have Ms. Simcox's whole medical record available for review, their opinions were not well-supported. *See Garcia v. Colvin*, No.

3:15-CV-0171, 2016 WL 1695104, at *16 (M.D. Pa. Apr. 26, 2016) ("[B]ecause the opinion of the state agency physician was not well-supported by the entire record as it did not include a review of the at least fourteen (14) psychiatric appointments . . . , substantial evidence does not support the ALJ's RFC determination.").

Finally, it also appears that the ALJ impermissibly engaged in the lay evaluation of medical evidence. *Burns v. Colvin*, 156 F. Supp. 3d 579, 588 (M.D. Pa. 2016) ("[A]n ALJ may not reject a supported treating source medical opinion with only lay interpretation of medical evidence."). Because the two state agency consultant opinions upon which the ALJ relied were proffered long before the medical record was completed and before Ms. Simcox's DBS procedure in April of 2013, their opinions could not be used to contradict Dr. Feeser's opinion given that only Dr. Feeser opined on Ms. Simcox's continued symptoms after the DBS treatment. Because he lacked any contradictory and contemporaneous medical opinions, the ALJ did not have the requisite evidence needed to cast aside Dr. Feeser's opinion. *See Burns*, 156 F. Supp. 3d at 588 ("[M]erely citing to contradictory medical evidence, as opposed to contradictory medical opinion, is insufficient."). Instead, the ALJ improperly rejected Dr. Feeser's opinion by substituting his own lay interpretation of medical evidence based on "the clinical findings in the treatment records." (Doc. 10-2, at 35); *see also Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) ("The ALJ's rejection of Dr. Picciotto's opinion that Brownawell has no ability to deal with work stresses and maintain concentration in a work environment was improperly based on an alleged inconsistency between Picciotto's treatment notes and his ultimate evaluation."); *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) ("The ALJ cannot, as he did here, disregard this

medical opinion based solely on his own amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility." (quotation omitted))

The ALJ's decision to afford limited weight to Dr. Feeser's opinion and significant weight to the opinions of the two nonexamining state agency consultants is without proper evidentiary support, and thus is not supported by substantial evidence. This Court therefore respectfully recommends that the Commissioner's decision be vacated and that the case be remanded.

B.  REMAINING GROUNDS

Because the Court recommends remand on the above-stated grounds, it declines to address Ms. Simcox's other allegations of error. "A remand may produce different results on these claims, making discussion of them moot." *Burns*, 156 F. Supp. 3d at 598.

C.  REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320. *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the Court concludes that it is necessary to further develop the record in the case at

bar, the undersigned United States Magistrate Judge respectfully recommends that the decision of the Commissioner be vacated and that the case be remanded for further proceedings.

## V.  RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be **VACATED**, and that the case be **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). It is further recommended that the Clerk of Court be directed to **CLOSE** this case.

Dated: June 9, 2017                                  *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GINA F. SIMCOX,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

CIVIL ACTION NO. 1:16-CV-00499

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 9, 2017**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**